UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTY MARTIN,

       Plaintiff,

v.

ALLEGAN COUNTY MEDICAL
CARE COMMUNITY,

       Defendant.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

## COMPLAINT AND JURY DEMAND

Liberty Martin ("Plaintiff"), by and through the undersigned attorneys, HURWITZ LAW, PLLC, states the following:

## INTRODUCTION

1. Allegan County Medical Care Community ("Defendant") deliberately flouted Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") by failing to engage in the requisite interactive process with Plaintiff to evaluate

potential accommodations. Consequently Plaintiff, who bravely served the public during the worst days of the pandemic, was terminated on February 11, 2022.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Liberty Martin resides in the City of Allegan, County of Allegan, State of Michigan.

3. Defendant Allegan County Medical Care Community is a domestic nonprofit corporation that offers rehabilitation, residential long-term care, and adult day care in Allegan, Michigan.

4. The Western District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA") claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Defendant operates its businesses.

6. Plaintiff received a Right to Sue letter from the EEOC on September 27, 2023.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

7. On November 5, 2021, Defendant announced its COVID-19 mandate and dictated that all employees receive their first dose of the COVID-19 vaccination by January 27, 2022 and must be fully vaccinated by February 28, 2022.

8. Defendant offered a "Staff Request Religious Accommodation from the COVID-19 Vaccine" form.

9. The form outlines reasonable accommodations for employees seeking religious exemption from the vaccine mandate, including weekly testing and the use of personal protective equipment ("PPE").

## Plaintiff's Religious Accommodation Request

10. On November 22, 2022, Plaintiff submitted her religious accommodation request, proclaiming that her sincerely held *bona fide* religious beliefs preclude her from being vaccinated from COVID-19.

11. Plaintiff submitted her religious accommodation request before Defendant's deadline.

12. Plaintiff's accommodation request stated:

> I have a sincerely held religious belief, practice, or observance that prevents me from receiving the COVID-19 vaccine and I request an exemption from the CMS Vaccine Mandate. I understand that if my request for an exemption is granted, I may need to take enhanced protective measures, such as being tested more often and/or wearing an N95 at all times in patient care areas.

13. Plaintiff's signature on her accommodation request affirms that she would adhere to these accommodations, just as she had since the onset of the COVID-19 pandemic.

14. Defendant only allotted three lines for employees to answer the following question: "My sincerely held religious belief, practice, or observance conflicts with the COVID-19 vaccine requirement in the following way(s)."

15. Rather than forcing the extent to which Plaintiff's religion conflicts with the COVID-19 vaccine in three lines, Plaintiff attached a handwritten letter delineating her beliefs, stating:

> I, Liberty Martin, am requesting a religious accommodation from vaccines (COVID-19 and others) because they conflict with my deeply held religious beliefs.

3

> In my faith my body does not belong to me. I do not make the choices for my body, my Heavenly Father made those choices for me in his work. He teaches us from genesis to Revelations what we are allowed or not to put into our bodies. So if you are mandating me on what to put into his Temple, then you are burdening my religious freedom by taking the choice of what is put into my body away from my God and giving it to the government.

16. On January 24, 2022, Defendant denied Plaintiff's religious accommodation request, stating, in pertinent part, "…the Facility finds that your requested accommodation (to remain unvaccinated) will cause an undue hardship to the Facility, particularly in terms of the risk of harm to the Facility's vulnerable population."

17. However, this proffered reasoning for denying Plaintiff's request is pretextual.

18. Defendant fails to explain why accommodations of wearing an N95 mask for the duration of Plaintiff's shift and testing daily were no longer adequate.

19. Defendant also failed to explain exactly how resident safety was threatened by Plaintiff not being vaccinated.

20. This explanation is crucial, considering that Plaintiff was a cook for the Company and did not have direct contact with the vulnerable population that it mentioned in Plaintiff's rejection letter.

21. Plaintiff seeks to make daily decisions, including those regarding vaccination and other medical decisions, through prayer and scripture.

22. Plaintiff was raised in the Reformed Protestant Church and bases her sincere religious beliefs on the foundation the church created in her youth.

23. While Plaintiff strayed from the church during her teen and young adult years, she has recommitted herself to her faith over the past twenty years.

24. Plaintiff relies on the Lord and readings from the Bible when making all critical choices.

25. Plaintiff credits teachings from the Bible in relieving a turbulent situation between Plaintiff and her brother.

26. Plaintiff earnestly believes the Lord knows best in all things, so she turns to daily prayer for guidance through life's trying times.

27. Plaintiff completed a class at Hillsdale College titled "The Genesis Story".

28. Additionally, Plaintiff is currently enrolled in a class titled "Ancient Christianity".

29. Plaintiff enrolls in these courses to advance her faith and allow her to strengthen her relationship with the Lord.

30. Plaintiff takes part in daily Bible Study lessons and daily devotionals through IBelieveDaily.com and the mobile application "Walking by Faith with Pastor Duane".

31. Plaintiff streams religious services every Sunday and cherishes this time as a connection with God.

32. Plaintiff's decision to not receive the COVID-19 vaccine is rooted in her belief that altering her God-given DNA goes against God's wishes.

33. Plaintiff prayed for several weeks upon the announcement of Defendant's vaccine mandate and referred to the comfort of the Lord in guiding her decision to request accommodation.

34. While facing the crisis that asked her to choose between her relationship with God and her employment, Plaintiff was guided by the following Bible verse: "For our struggle is not against flesh and blood, but against the rulers, against the authorities, against the powers of this dark world and against the spiritual forces of evil in the heavenly realms" Ephesians 6:12.

35. Additionally, Plaintiff was guided by her belief the COVID-19 vaccine, and the subsequent mandates, were the beginning of End Times.

36. Plaintiff does not take any pharmaceutical medication and relies on the Lord and natural remedies to ease any ailments.

37. Plaintiff worked safely and successfully for Defendant prior its vaccine mandate.

38. There are a host of reasonable accommodations that Defendants failed to seriously consider.

39. Plaintiff could have tested daily to confirm whether she was ill.

40. Plaintiff could have engaged in frequent sanitizing and disinfecting.

41. Plaintiff could have worn gloves and respirators in the workplace.

42. Plaintiff could have transferred to a more solitary position.

43. Defendant made employees work in-person throughout the pandemic.

44. Before any vaccine was developed, the following safety measures were deemed sufficiently effective to protect employees, residents, and their loved ones: daily testing, enhanced sanitation measures, including handwashing and disinfecting, gloves and respirators, and social distancing whenever practicable.

45. Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework. U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

46. "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*.

47. Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965). Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

48. Defendant's religious animus is evidenced by the fact that, while it refused to accommodate employees who reject the vaccine on religious grounds, it does not require independent contractors, vendors, residents, or their visitors to be vaccinated, even though they interact with Defendant's staff and residents.

49. Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it suspended Plaintiff without pay on January 28, 2022 and terminated her on February 11, 2022.

50. "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

51. Defendant's accommodation process was arbitrary and inconsistent.

52. Defendant did not explore available reasonable accommodations from the vaccine.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could it Establish Undue Hardship

53. The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

54. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

55. Defendant cannot satisfy its burden of proving undue hardship.

56. Plaintiff was not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

57. Plaintiff was more than willing to comply with all safety protocols.

58. Plaintiff had been engaging in these alternative practices, which had been deemed effective throughout the pandemic, for approximately eighteen (18) months prior to issuance of Defendant's vaccine mandate.

## COUNT I
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
## RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE
## ON BEHALF OF PLAINTIFF

59. Plaintiff restates the foregoing paragraph as set forth fully herein.

60. Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

61. Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

62. Plaintiffs can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of same; and (3) they were disciplined for failing to comply with the employment requirement. *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

63. Plaintiff holds a sincere religious belief that conflicts with Defendant's vaccine mandate because Plaintiff's religious belief precludes her from taking the COVID-19 vaccine.

64. Plaintiff informed her employer of the same.

65. Plaintiff was disciplined for failing to comply with the vaccine mandate.

66. Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it granted a false "accommodation" of an unpaid suspension, which is not an accommodation at all. Defendant thereby violated the law.

67. Defendant could have offered Plaintiff multiple reasonable accommodations without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

68. Defendant never explained exactly why it could not accommodate Plaintiff.

69. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and she will so suffer in the future.

70. Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, a loss of health insurance coverage, a loss of and impairment of her earning capacity and ability to work because of Defendant's denial of her request for religious accommodation.

71. Plaintiff has been required to employ the services of an attorney as a result.

72. Defendant's actions were intentional and/or reckless.

## COUNT II
## VIOLATION OF ELCRA, MCL 37.2101, *et seq.*
## DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION

73. Plaintiff incorporates the foregoing paragraphs by reference herein.

74. Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

75. Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

76. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

77. Defendant directly discriminated against Plaintiff based on termination after the employee espoused sincerely held religious beliefs that conflicted with Defendant's policy.

78. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

79. Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

80. Defendant placed Plaintiff on unpaid suspension before ultimately terminating Plaintiff.

81. Plaintiff was qualified for the position.

82. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

83. Plaintiff was terminated and replaced with a person of different religious beliefs.

84. Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's unique sincerely held spiritual beliefs.

85. EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

86. The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

87. Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

88. In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

89. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Reasonable attorney's fees; and

e. Such other relief as in law or equity may pertain.

Respectfully Submitted,
HURWITZ LAW, PLLC

*/s/ Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiff

                                                                340 Beakes St., Suite 125
                                                                Ann Arbor, MI 48103
                                                                (844) 487-9489
Dated: November 28, 2023                        noah@hurwitzlaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTY MARTIN,

       Plaintiff,                                   Case No.

v.

                                              Hon.

ALLEGAN COUNTY MEDICAL
CARE COMMUNITY,

       Defendant.

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Suite 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

## **DEMAND FOR TRIAL BY JURY**

      Liberty Martin ("Plaintiff"), by and through the undersigned attorneys, HURWITZ LAW, PLLC, hereby demands a trial by jury, for all issues so triable.

                                                                            Respectfully Submitted,

                                                                             HURWITZ LAW, PLLC

                                                                             */s/ Noah S. Hurwitz*
                                                                             Noah Hurwitz (P74063)
                                                                             Attorney for Plaintiff

Dated: November 28, 2022